UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
UNITED STATES OF AMERICA                          :
                                                  :
        - v. -                                    :
                                                  :   S2 24 Cr. 497 (DLC)
BIANNEURY PENA                                    :
  a/k/a "Charly,"                                 :
                                                  :
                Defendant.                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE***


                                        JAY CLAYTON
                                        United States Attorney
                                        Southern District of New York


Ashley C. Nicolas
Brandon D. Harper
Ryan W. Allison
Assistant United States Attorneys
        - *Of Counsel* -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
ARGUMENT .................................................................................................................................. 1
I.   The Court Should Allow the Introduction of Certain Hearsay Statements Upon Further Request of the Government ................................................................................................. 1
    A.   Applicable Law – Statements in Furtherance of the Conspiracy .................................... 2
    B.   Messages on the Rosario Cellphone ................................................................................ 5
    C.   Messages on the Pena Cellphone .................................................................................... 8
CONCLUSION ............................................................................................................................. 11

**PRELIMINARY STATEMENT**

A jury trial in this case is set to begin on July 15, 2025. The defendant filed motions *in limine* (the "Motion"), seeking an order to: (i) exclude unidentified messages from a cellphone seized from co-conspirator ABEL ROSARIO ("ROSARIO") on hearsay grounds and as unfairly prejudicial and (ii) exclude largely unidentified messages from the defendant's cellphone on hearsay grounds and as unfairly prejudicial. Because the defense has not yet identified with sufficient specificity the messages it seeks to exclude, the Motion should be denied.[1]

**ARGUMENT**

**I.   The Court Should Allow the Introduction of Certain Hearsay Statements Upon Further Request of the Government**

At trial, the Government intends to introduce probative statements made by the defendant and his co-conspirators, made primarily through text and audio messages that have been produced to the defendant. These statements will be offered pursuant to Rule 801(d)(2)(A), 801(d)(2)(E), or other relevant exceptions to the hearsay rule. Rather than identify with specificity the messages that it seeks to have excluded, the defense has identified a set of contacts in a cellphone seized from the defendant's co-conspirator ABEL ROSARIO, referred to as "the Rosario Phone Named Contacts."[2] Dkt. 61 at 7. The defense so moves on hearsay grounds and — again, without identifying any specific content — on the grounds that the messages pertain to unrelated conspiracies and are therefore unfairly prejudicial. *Id.* Similarly, the defense has identified two contacts saved in the defendant's own phone, referred to as the "the Pena Phone Named

---

[1] The Government does not object to the defense raising more targeted objections to specific text message exchanges after the Government produces its exhibits.

[2] The contacts saved as "Ariancy," "Bori," "Compa Franklin," "Edwar Jose," "Estarlin.cm," "Leon," and "Peluche."

1

Contacts,"[3] and seeks a blanket ruling excluding messages between the defendant and those contacts on hearsay grounds. *Id.* at 11. As to two specific messages in which the defendant — who is alleged to have trafficked cocaine — is referred to by another person, using the names of prolific cocaine dealers, the defense moves to exclude the messages as "unfairly prejudicial." *Id.*

This opposition does not lay out each such statement that the Government expects to introduce but provides examples of each type of hearsay statement it will likely seek to admit. The Government does not seek a blanket ruling by the Court as to admissibility at this time, but it describes the categories of statements and the applicable law to aid the Court as issues arise. Accordingly, the Government requests the Court deny the Motion.

**A. Applicable Law – Statements in Furtherance of the Conspiracy**

Federal Rule of Evidence 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if … the statement is offered against an opposing party and … was made by the party's co-conspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: (1) that a conspiracy that included the defendant and the declarant existed; and (2) that the statement was made during the course of, and in furtherance of, that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). When determining whether the predicate conspiracy has been established, the district court is not bound by the Rules of Evidence, *see* Fed. R. Evid.

---

[3] "Darling Castro" and "Joan C Hernandez"

2

104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181). Of course, '[t]here is no requirement that each member of a conspiracy conspire directly with every other member of it or be aware of all acts committed in furtherance of the conspiracy, or even know every other member." *United States v. Rooney*, 866 F.2d 28, 32 (2d Cir. 1989) (internal citations omitted); *see also United States v. Vanwort,* 887 F.2d 375, 383 (2d Cir 1989); *United States v. Rich*, 262 F.2d 415, 418 (2d Cir. 1959) ("persons can be involved in a conspiracy even though they do not know all other members of the conspiracy or participate in each phase.").

The conspiracy in furtherance of which the statement was made does not have to be the conspiracy charged in the indictment. *See Gigante*, 166 F.3d at 82 ("The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment."); *United States* v. *Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) ("Though . . . Fed. R. Evid. 801(d)(2)(E) requires proof that both the declarant and the party against whom a declaration is offered be members of the same conspiracy, it does not require that the conspiracy be one charged in the indictment"). And, "[w]hile both the declarant and the party against whom the statement is offered must be members of a conspiracy, the person to whom the statement was made need not be if he has knowledge of the conspiracy." *United States v. Beech–Nut Nutrition*, 871 F.2d 1181, 1199 (2d Cir.1989). Nor does the defendant need to have been a member of the conspiracy at the time the statement was made. *United States* v. *Farhane*, 634 F.3d 127, 161 n. 35 (2d Cir. 2011); *Haywood v. Portuando*, 288 F. Supp. 446, 472 (S.D.N.Y. 2003).

To be in furtherance of a conspiracy, a statement "must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy." *United States v. Rivera*,

3

22 F.3d 430, 436 (2d Cir. 1994). Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Thus, statements are in furtherance of the conspiracy if they, among other things: (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158 (internal quotations omitted); (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of "the identity and activities of his coconspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy." *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994); *see also Desena*, 260 F.3d at 159; *Maldonado-Rivera*, 922 F.2d at 958; *United States v. Flaharty*, 295 F.3d 182, 199-200 (2d Cir. 2002).

In fact, "[s]tatements that describe past events are in furtherance of the conspiracy if they are made . . . simply to keep coconspirators abreast of current developments and problems facing the group." *United States v. Jefferson*, 215 F.3d 820, 824 (8th Cir. 2000) (internal quotations omitted). For example, in *United States v. Lozano-Reyes*, the Second Circuit affirmed the trial court's admission of co-conspirator statements relating to past events because the statements served a current purpose in the conspiracy, namely, "to engender trust, to increase [the witness's]

4

familiarity with the conspiracy's modus operandi, and to outline future conspiratorial actions and the anticipated profits." 101 F.3d 686, at *2 (2d Cir. 1996).[4]

### B. Messages on the Rosario Cellphone

The defense has sought a blanket ruling to exclude all messages exchanged between the defendant's co-conspirator ROSARIO and the individuals included among the Rosario Phone Named Contacts. While the defense motion lacks the specificity to permit a detailed Government response, the Government nevertheless offers here an example of the types of messages from ROSARIO's cellphone that it expects to offer at trial, which are clearly statements made by ROSARIO in furtherance of the defendant and ROSARIO's drug trafficking and gun trafficking conspiracies.

As laid out in the Government's motion *in limine*, the Scheme involved at least three trips made by the defendant between New York and North Carolina in furtherance of gun and drug trafficking.[5] Dkt. 59. Communications on ROSARIO's cellphone corroborate and relate to the defendant's travel. For example, one of the individuals included in the Rosario Phone Named Contacts—which the defense seeks to exclude—is "Leon,"[6] with whom ROSARIO communicates in relation to Trip 2. On May 28, 2024, ROSARIO sent "Leon" a series of messages, including a video (the "Video"), referencing cocaine. The same day, ROSARIO sent "Leon" messages that

---

[4] In the alternative, depending on declarant availability, the Government may also seek to admit certain statements pursuant to Fed. R. Evid. 804(b)(3).

[5] As outlined in its motions *in limine*, the Government expects to show that the defendant made at least three trips in furtherance of the Scheme: on or about May 9, 2024 ("Trip 1"), between on or about May 29 and 30, 2024 ("Trip 2"), and between on or about June 5 and June 7, 2024 ("Trip 3").

[6] "Leon" is referred to as "CC-1" in the Government's motion *in limine*. Dkt. 59 at 3.

referenced particular guns, including "Glocks," an "r15," and an "Uzi," along with prices. Also on May 28, ROSARIO sent the Video to another of the Rosario Phone Names Contacts – "Bori." ROSARIO also sent Bori a photograph of what appear to be bricks of cocaine stacked atop a flier for a Bronx daycare. Bori responded the same day—again, the day before the defendant traveled to North Carolina—with two screenshots of a WhatsApp conversation discussing, in sum and substance, travel logistics that align with the timing of Trip 2.

In the very early morning hours of May 30, 2024, a contact saved in the defendant's cellphone as "Alcides" sent the defendant the below photographs.

  

Shortly after receiving the above photos—at the end of Trip 2—the defendant forwarded the above left photograph to ROSARIO.[7] Significantly, the Government expects a firearms expert to testify that among the guns in the Photograph are guns that are consistent in appearance with a Glock, an AR-type rifle, and a gun that resembles an Uzi. At the end of Trip 2, ROSARIO asked the

---

[7] Earlier, on or about May 23, 2024, ROSARIO also sent the above right photograph to another of the Rosario Named Phone Contacts — Estarlin.

defendant for his full name along with that of Alcides so that the defendant and Alcides could receive payment.

Later, on or about May 30, 2024 (after Trip 2), the defendant messaged another person that he had returned from Carolina "last night" and had come "back with some heavy stuff from down there." The defendant continued by explaining, "I have a nice couple bucks from when I went to take the drugs over to Carolina" and that he was "going to keep that money here to invest it further to buy work and take it to Carolina, to the black people," which, the Government will argue, based on the entirety of the evidence that is expected to be admitted at trial, confirms that the defendant had, in fact, taken the cocaine depicted in ROSARIO's messages to North Carolina and returned with guns.

Based on the facts set forth above and the other evidence that will be admitted at trial, there will be ample evidence for the Court to conclude that the defendant, ROSARIO, Leon, Estarlin, Bori, and Alcides were participants in a conspiracy to traffic guns and drugs between New York City and North Carolina for purposes of Rule 801(d)(2)(E). At a minimum, it is clear that when ROSARIO is sending drug-related and gun-related messages to other individuals—like "Leon" and "Bori"—ROSARIO is sending those messages in furtherance of the defendant and ROSARIO's plan to traffic drugs to North Carolina during Trip 2 and return to New York City with guns. Even if the defendant did not have a personal relationship or communicate directly with each member of the conspiracy, the statements of his co-conspirators, made in furtherance of the conspiracy, during the pendency of the conspiracy, are admissible against him and should be admitted when offered at trial.

To the extent the defense argues that there is prejudice created by the admission of evidence stemming from unfair conspiracies, Dkt. 61 at 10, that objection becomes moot once a conspiracy,

7

of which of the defendant is a member, has been established. There is clearly no *unfair* prejudice that substantially outweighs the highly probative value of messages directly relating to the extent and scope of the charged drug and gun trafficking conspiracies in which the defendant was participating.

### C. Messages on the Pena Cellphone

The defense further seeks to exclude unidentified messages from the Pena Phone Named Contacts. As demonstrated above, prior to introducing any statements pursuant to a hearsay exception or as non-hearsay, the Government will lay the proper foundation.

Defense counsel has identified with particularity messages excerpted from a conversation between the defendant and a user saved as "Joan C Hernandez." Defense counsel seeks to exclude the messages pursuant to Fed. R. Evid. 403. Specifically, defense counsel calls out a portion of a conversation the conversation that occurs on May 15, 2024, during Trip 2.

To place the Trip 2 conversation in context, it is important to note that the defendant messaged with Hernandez during Trip 1, at which time Pena clarified he was in North Carolina for a job.[8]

| PENA (the Defendant)<br><br>5/8/2024 | I'm here really far away, in North Carolina. And in the early morning I found myself in a [U/I] running. We're resting [U/I]. |
|---|---|
| JOAN C HERNANDEZ<br><br>5/8/2024 | [U/I] running. [U/I]. [U/I] some bucks? A job with bucks? That [I/I] looks good. You know. |

---

[8] The original audio messages were in Spanish. The translations contained herein are drafts

The next time the defendant communicated with Hernandez was on May 15, 2024, between Trips 1 and 2, at which time the defendant was referred to as El Chapo Guzman and Pablo Escobar. The portion of the conversation to which the defense objects is included in full below:

| | |
|---|---|
| PENA 5/15/24 | [U/I] El Chapo Guzman. |
| JOAN C HERNANDEZ 5/15/24 | Chapo Guzman? Chapo Guzman is serving a life sentence. |
| PENA 5/15/24 | Anyway, we're going to get him out. Wherever the boss is. |
| JOAN C HERNANDEZ 5/15/24 | [\U/I] boss of yours. [U/I]. You're going to become a new Chapo Guzmán now. A new Pablo Escobar. |

The Government does not intend to offer these statements for the truth—that is, that El Chapo Guzman is serving a life sentence, or that the defendant will, in fact, become the leader of a drug cartel in the future. Instead, the Government intends to offer these statements to show the defendant's state of mind as it relates to his knowing and willful participation in a drug trafficking conspiracy.

The probative value of these statements is very high. Count Three requires the Government to prove that the drug to be distributed in this conspiracy was, in fact, cocaine. The Government

---

prepared by Court-certified interpreters who the Government is preparing to call at trial absent the defendant's agreement to stipulations regarding the translations of these and other messages.

also must prove that the defendant knowingly and willfully agreed to participate in a conspiracy to distribute cocaine. That the defendant referred *to himself* as Chapo Guzman, and did not dispute a co-conspirator's comparison of the defendant to Pablo Escobar, is direct evidence of the defendant's knowledge that the drug he was dealing was the drug that made the Colombian kingpin Pablo Escobar famous: cocaine. There is, of course, prejudice — indeed, all inculpatory evidence presents some prejudice. The question for the Court is whether the prejudice is *unfair*, and if so, whether that *unfair* prejudice of the evidence *substantially* outweighs the probative value. Fed. R. Evid 403. Here, the prejudice is, at most, marginal. To begin with, neither the defendant or Hernandez claim in the text messages that they are already distributing quantities of cocaine that are on par with El Chapo Guzman and Pablo Escobar, and the Government will not be arguing anything to that effect. Rather, these messages appropriately show that the defendant's aspirations and plans were to sell large quantities of cocaine in the future. This type of prejudice is also certainly not unfair. This is a case where the defendant is alleged to have dealt drugs. The jury will see videos of drugs, see photos of cocaine, and will hear about the odor of drugs left behind on the defendant's luggage. In a case about drug dealing, there is nothing unfairly prejudicial—and it certainly does not substantially outweigh the probative value of the evidence—about introducing the fact that the defendant embraced comparisons between him and notorious drug traffickers.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Motion be denied.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:   */s/*_____
       Ashley C. Nicolas
       Brandon D. Harper
       Ryan W. Allison
       Assistant United States Attorneys

Dated: June 13, 2025
       New York, New York